JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>Plaintiff,<br><br>v.<br><br>CONSOLIDATED DISPOSAL SERVICE, LLC a Delaware limited liability company,<br><br>Defendant. | Case No.: 2:25-CV-5527 WLH (ASx)<br><br>**CONSENT DECREE** |

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendant Consolidated Disposal Service, LLC ("Defendant") owns and operates a facility at 4133 Bandini Boulevard in Vernon, California, 90058, known as Innovative Waste Control, under Waste Discharger Identification number 4 19I013230 ("Facility");

**WHEREAS,** the Facility's industrial activities consist of waste transfer activities, and vehicle and equipment maintenance, fueling, and parking. The Facility is categorized under Standard Industrial Classification ("SIC") Code 4093 ("Refuse Systems");

**WHEREAS,** storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit"),[1] and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act

---

[1] Any reference to the "General Permit" or "Permit" shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges as feasible and necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on August 30, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility;

**WHEREAS**, on June 18, 2025, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:25-CV-5527 WLH (ASx) ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including Reach 2 of the Los Angeles River, the Los Angeles

CONSENT DECREE

River Estuary, San Pedro Bay, and ultimately the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.      The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.      LA Waterkeeper has standing to bring this action.

5.      The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term (as defined below) of this Consent Decree.

**I.      OBJECTIVES**

6.      It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues

alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.     In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.     AGENCY REVIEW AND CONSENT DECREE TERM

### A.     AGENCY REVIEW OF CONSENT DECREE

8.     Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.     Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.     Entry of Consent Decree. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B.     DEFINITIONS

11.     Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under

the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

    a.    "BAT" means the Best Available Technology Economically Achievable.

    b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

    c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

    d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

    e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

    f.    "Design Storm" means the volume and flow rate of runoff produced from a design storm as defined by General Permit Section X.H.6.

    g.    "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

    h.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

    i.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

    j.    "Forecasted Rain Event" means a forecasted rain event as determined by the National Oceanic and Atmospheric

CONSENT DECREE

Administration (http://forecast.weather.gov/) for "90058, Vernon, CA, USA"[2].

    k.    "MIP" means a Monitoring Implementation Plan.

    l.    "PPT" means Pollution Prevention Team.

    m.    "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

    n.    "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

    o.    "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

    p.    "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

    q.    "SWPPP" means a Storm Water Pollution Prevention Plan.

    r.    "Term" means the period between the Effective Date and the "Termination Date."

    s.    "Termination Date" means the latest of:

        i.    Three (3) years from the Effective Date;

        ii.    June 30 following two (2) years after the Treatment System described in Paragraph 15.b below, is fully installed and operational;

        iii.    Ten (10) Days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the later of the dates in Paragraph 11.s.i and 11.s.ii  above; or

---

[2] Available at. https://forecast.weather.gov/MapClick.php?lat=34.002469&lon=-118.213089

iv.    Ten (10) Days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

t.    "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit and/or the SWPPP (including liquids from the transfer station misting system and flushing of potable water systems), is not permitted under this Consent Decree.

13.    <u>Current and Additional Best Management Practices.</u> At all times, Defendant shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those necessary to comply with BAT/BCT-level pollutant reductions where required.

14.    <u>Rain Gauge/Sensor.</u> Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) Days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

15.    <u>Structural and Non-Structural BMPs for the Facility.</u>  Defendant shall develop and implement the following BMPs at the Facility:

a. Within forty-five (45) Days of the Effective Date:

i. Continue sweeping using the Facility's Tymco 210 regenerative sweeper or another comparable regenerative air sweeper and an additional portable backpack vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 µm) particles on all paved areas at least once per day during the Wet Season, and once per week outside of the Wet Season;

ii. Employ hand sweeping and/or` vacuum sweeping in areas inaccessible to hand sweeping at least twice per week and twice per day within 48 hours of a Forecasted Rain Event to complement mechanical sweeping during the Wet Season;

iii. Develop and implement a sweeper maintenance plan, which shall include a schedule for cleaning and maintenance for the Facility's mechanical sweeper and vacuum sweeper;

iv. Patch, pave, or otherwise resurface areas of degraded pavement or asphalt throughout the Facility;

v. Install permanent concrete berms, curbs, or similarly effective physical barriers that prevent fugitive storm water discharge from any point other than the designated Discharge Points. This includes, but is not limited to, preventing storm water from circumventing the cattle grid at the front gate and discharging on to Bandini Boulevard without first passing through the sump;

vi. Clean and maintain the filter cartridges in the sump so water flows freely through the cartridges and is discharged only through Discharge Point 1 as designed. At least once per

month and prior to a Forecasted Rain Event, visually monitor and maintain the cartridges so they are free of debris and effectively filter and discharge storm water without being bypassed due to build up or debris.

vii.    Visually inspect the facility's east and west boundary walls during all QSEs to ensure fugitive discharges do not occur.

viii.   During each QSE, Defendant shall: (1) maintain a written log of visual observations, (2) take representative photographs documenting observations, and (3) provide Plaintiff a copy of the written observation log and photographs within ten (10) Days of a written request for such records by LA Waterkeeper;

ix.     If fugitive discharges are observed from wall cracks or low spots along the east and west boundary walls of the Facility, within thirty (30) Days of the observation, install patches, permanent concrete berms, curbs, or similarly effective physical barriers necessary to prevent storm water from flowing off site other than through the Discharge Point and/or Treatment System;

x.      Within twenty-four (24) hours prior to a Forecasted Rain Event, remove any uncovered waste, cover all industrial materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

CONSENT DECREE

xi. Institute an equipment and vehicle maintenance program that ensures:

1. no maintenance activities occur during wet weather, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

2. maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

3. when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground;

xii. Within ten (10) Days of each BMP listed in paragraphs 15.a.iv, 15.a.v, 15.a.vi, and 15.a.viii, being initially implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs (if applicable), that such BMP has been implemented as set forth above.

b. Treatment System:

i. By January 15, 2026, Defendant shall develop, and design an advanced stormwater treatment system ("Treatment System") at the Facility that meets the following parameters:

1. The sizing and pumping capacities of the Treatment System shall meet the "Design Storm Standards for Treatment Control BMPs" requirements set forth in Section X.H.6 of the Permit.

2. The media employed in the Treatment System shall be selected in order to maximize the removal of TSS,

11

CONSENT DECREE

O&G, zinc, iron, copper, aluminum, COD, and nitrates + nitrites from the Facility's storm water in accordance with applicable regulatory requirements.

3.     Defendant shall ensure that any and all storm water that discharges from the Facility up to a Design Storm shall flow through the Treatment System before discharging from the Facility, eliminating fugitive discharges through the Facility's front gate; provided, however, that stormwater runoff from the roofs of the buildings at the Facility may be directly discharged to the municipal storm drain system provided this stormwater is not commingled with the stormwater runoff from the paved area of the Facility.

4.     The sizing and pumping capacities of the Treatment System shall be increased whenever necessary to meet the "Design Storm Standards for Treatment Control BMPs" requirements set forth in Section X.H.6 of the Permit.

5.     The Treatment System shall include a flow meter that measures and records the volume of storm water flowing through the Treatment System?

ii.     By January 15, 2026 , Defendant shall submit complete applications for all permits or approvals necessary to construct and operate the Treatment System. Defendant shall provide LA Waterkeeper with copies of each application within seven (7) days of submitting applications to the relevant governmental or regulatory agency.

12

CONSENT DECREE

1. Within ninety (90) Days of receipt of all permits and approvals necessary to construct and operate the Treatment System, Defendant shall install, operate, and optimize the Treatment System.

2. Within ten (10) Days of the installation of the Treatment System being completed and the Treatment System being fully operational, Defendant shall confirm to LA Waterkeeper in writing certified by a QISP, with photographs, that installation of the system has been completed and that the system is fully operational and properly calibrated.

3. Defendant shall contract with Clear Water Services or other qualified third-party provider for regular maintenance of the Treatment System during the Term.

iii. The January 15, 2026, due dates in subparagraphs (i) and (ii) shall be extended as reasonably necessary should Defendant be unable to complete the Treatment System design and/or complete the applications for the permit and approvals for this system due to circumstances not currently anticipated by Defendant, including but not limited to: (1) the imposition of unanticipated or unknown permitting requirements or conditions by the City of Vernon or other permitting bodies that require changes in the proposed design of the Treatment System or the requirements for the permitting of said system; (2) delays by the City of Vernon or other permitting bodies in responding to requests for information or processing the permit applications, not caused by the negligent acts or omissions of Defendant; (3)

13

CONSENT DECREE

the non-performance, bankruptcy, or default of Defendant's retained engineers or consultants, provided that Defendant exercises reasonable diligence in replacing such party; (4) the discovery of previously unknown physical, geotechnical, or other site conditions that require a substantial redesign of the Treatment System; or (5) any other circumstances beyond Defendant's reasonable control, including but not limited to force majeure events such as fires, floods, earthquakes, labor strikes, supply-chain disruptions, or pandemics.

    c.    Roof Replacement:

        iv.    By February 20, 2026, Defendant shall design and submit a complete building permit application to the City of Vernon for the replacement of the roof of the Facility's northern and southern transfer station buildings that meets the following parameters ("Roof Replacement"):

            6.    The Roof Replacement shall not permit any storm water to come into contact with any materials inside the northern and southern transfer station building.

            7.    The Roof Replacement shall connect the roofs of the northern and southern transfer station building such that storm water cannot enter into either building from the gap between the roofs.

        v.    Defendant shall provide LA Waterkeeper with copies of each application within seven (7) days of submitting applications to the relevant governmental or regulatory agency.

CONSENT DECREE

vi.    Within ninety (90)-days of receipt of a building permit, Defendant shall install the Roof Replacement at the Facility.

d.  Organics and Waste Storage Under Transfer Station Roof:

Defendant shall cause all incoming and outgoing putrescible waste to be located at all times under cover of the transfer station roof.  In extraordinary events where putrescible waste must be located outside of the transfer station, Defendant shall cause any such putrescible waste to be covered with tarps or located under similar waterproof cover.

B.    SAMPLING AT THE FACILITY

16.    Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point from all Qualifying Storm Events. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. If Defendant would have been required to collect samples during a rain event pursuant to this Consent Decree had such rain event produced a discharge, but Defendant did not collect samples because such rain event did not produce a discharge, then Defendant shall document the inability to sample by taking representative photographs during the rain event of Discharge Points from which no discharge occurred. Defendant shall submit such photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain event, within seven (7) days of a written request for such records by LA Waterkeeper

17.    Sampling Parameters. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant intend to conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit for any reason, including without limitation as a result of changed operations, a revised pollutant source assessment, or

15

CONSENT DECREE

a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendant shall immediately notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) Days of such notification.

18.    <u>Laboratory and Holding Time.</u> Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

19.    <u>Detection Limit.</u> Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

20.    <u>Reporting.</u> Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within seven (7) days of receiving the laboratory report with the results.

**C.    REDUCTION OF POLLUTANTS IN DISCHARGES**

21.    <u>Table 1 Numeric Limits.</u> Defendant shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels below those in Table 1.

CONSENT DECREE

TABLE 1[3]

| Analytes | Values | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L | General Permit NAL |
| Oil and Grease | 15 mg/L | General Permit NAL |
| Total Aluminum | 0.75 mg/L | General Permit NAL |
| Total Copper | 0. .0048 mg/L | Cal. Toxics Rule |
| Total Iron | 1.0 mg/L | General Permit NAL |
| Total Zinc | 0.12 mg/L | Cal. Toxics Rule |
| COD | 120 mg/L | General Permit NAL |
| N+N | 0.68 mg/L | General Permit NAL |
| pH | 6.0- 9.0 s.u. | General Permit NAL |

22.    Table 1 Exceedances. An "Exceedance" of Table 1 is defined as follows:

a.    For Total Suspended Solids, Oil & Grease, Total Aluminum, Total Iron, COD, and pH. Where the concentration of any pollutant in any storm water sample from the Facility exceeds the applicable numeric limit contained in Table 1.

b.    For Total Copper or Total Zinc: Where the concentration of either pollutant in any two (2) storm water samples from the Facility exceed the numeric limit contained in Table 1.[4]

23.    Action Plan for Table 1 Exceedances. As of the Entry Date, and for the remainder of the Term, if Defendant has an unauthorized non-storm water discharge that is not allowed under Paragraph 12, a by-pass of storm water past the Treatment System when volumes or flows are less than the Design Storm capacities set forth in

---

[3]    Unless the source of a limit in Table 1 is specifically noted as a "negotiated term", the numeric limit listed in Table 1 is for reference only, and the Table 1 limit for such parameter shall be the then-effective limit provided by the applicable source, e.g., if the source for iron is listed as its NAL and the NAL for iron is either increased to 1.1 mg/L or decreased to 0.9 mg/L, such new NAL, and not 1.0 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for iron being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

[4]    As examples: (i) samples from both Sample Point 1 and Sample Point 2 exceeding the 0.09 mg/L standard for zinc on December 28, 2024; (ii) samples from Sample Point 1 exceeding the 0.09 mg/L standard for zinc on December 28, 2024 and on March 15, 2025; or (iii) a sample from Sample Point 1 exceeding the 0.09 mg/L standard for zinc on December 28, 2024, and a sample from Sample Point 2 exceeding the 0.09 mg/L standard for zinc on March 15, 2025.

17
CONSENT DECREE

Paragraph 15.b above, or storm water samples demonstrate an Exceedance as defined above, Defendant shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility, and/or achieving compliance with the non-storm water discharge prohibition ("Action Plan").[5]  The complete Action Plan shall be submitted to LA Waterkeeper by Defendant by email within thirty (30) days of the unauthorized non-storm water discharge, bypass of storm water past the Treatment System, or the receipt of the laboratory report demonstrating the Exceedance, as applicable. Provided, however, that if Defendant has already submitted a plan to LA Waterkeeper for the exceedance of a specific parameter in Table 1 and that plan is under review or the BMP(s) described in that plan are in the process of being installed or implemented per the schedule in the plan, Defendant shall not be required to submit a further action plan relating to an exceedance of the same parameter during a subsequent QSE until after the BMP(s) described in the previous plan have been fully installed and implemented.

24.   Action Plan Requirements. It is intended that the plan be a brief summary sent via email of the issue and of the proposed action step(s) the Defendant intends to take to address the issue described in the plan, along with the proposed schedule for implementing the plan.

a.    Each plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s) and/or the applicable unauthorized by-pass of storm water past the Treatment System, and/or non-storm water discharge; (2) an assessment of the source of each contaminant exceedance, sizing or containment requirement, and/or applicable unauthorized non-storm water discharge; (3) the identification of

---

[5] The "Action Plan" discussed in this Consent Decree is a separate and distinct requirement from any "Action Plan" or Exceedance Response Actions discussed in the General Permit, and compliance with the "Action Plan" requirements of the Consent Decree is, therefore, separate and distinct from compliance with any "Action Plan" or Exceedance Response Action requirements of the General Permit.

additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), sizing or containment requirement, and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as reasonably and commercially practical, but in no event later than one hundred and twenty (120) days follow the Action Plan becoming "final" as described in paragraph 24.c below, unless a later implementation is mutually agreed upon by the Settling Parties. Within ten (10) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with representative photographs (if applicable), that such BMPs have been implemented as set forth in the Action Plan.

b. <u>Action Plan Proposed BMPs.</u> The following BMPs should generally be considered for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

i. <u>Treatment System Changes.</u> Installing additional components or systems, or otherwise improving, the advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

ii. <u>Hydrologic Controls.</u> Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the

19

CONSENT DECREE

engineered storm water conveyance system or storm water retention or treatment facilities.

    iii.    <u>Sweeping.</u> The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

    iv.    <u>Evaluation of Existing BMPs.</u>  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

    v.    <u>Power Washing.</u>  Power washing transfer station buildings to remove bird excrement, collecting waste water and disposing of water offsite or through the sanitary sewer if permitted.

    c.    <u>Action Plan Review.</u> LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete  Action Plan to provide Defendant with comments. Within fourteen (14) Days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. The Action Plan shall be considered "final" upon Defendant's response to LA Waterkeeper's proposed revisions, fourteen (14) Days from Defendant's receipt of LA Waterkeeper's proposed revisions to an Action Plan if Defendant does not provide a response by such time, or thirty (30) days after LA Waterkeeper's receipt of Defendant's Action Plan if LA Waterkeeper does not provide written comments by such time, as applicable. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any

CONSENT DECREE

disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the  Action Plan.

          d.     Defendant shall revise the then-current SWPPP to reflect the changes required by the  Action Plan, as set forth in Paragraph 29.b.i below.

### D.    VISUAL OBSERVATIONS

25.    <u>Storm Water Discharge Observations.</u> During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

26.    <u>Monthly Visual Observations.</u> During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

27.     Visual Observations Records. Defendant shall maintain observation records, including representative photographs, to document compliance with Paragraphs 25 and 26. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in an proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing.  Defendant shall provide LA Waterkeeper with a copy of those records within ten (10) Days of receipt of a written request from LA Waterkeeper for those records, provided that LA Waterkeeper shall request said records no more than twice during each calendar year of this Consent Decree.

28.     Employee Training Program. Within thirty (30) days of the Effective Date, Defendant shall develop and implement an annual employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

        a.     Materials. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

        b.     Language. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or

22

CONSENT DECREE

translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

    c.    Training Frequency. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated annually to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

    d.    Sampling Training. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

    e.    Visual Observation Training. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

    f.    Non-Storm Water Discharge Training. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

    g.    Employees. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

CONSENT DECREE

h.    Records. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within ten (10) Days of receipt of a written request, provided that LA Waterkeeper shall request said records no more than twice during each calendar year of this Consent Decree.

29.    SWPPP Revisions.

a.    Initial SWPPP Revisions. Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.    A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.    A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

iii.    Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

24

CONSENT DECREE

iv.   A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree, including accurately depicting the different drainage areas and flows;

v.   A MIP as required by sections XI and X.I of the General Permit;

vi.   A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

vii.   A Training Program as described above in Paragraph 28.

b.   Additional SWPPP Revisions.

i.   Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

ii.   Within thirty (30) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated

25

CONSENT DECREE

SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

 c. <u>Review of SWPPP.</u>  For any SWPPP updates pursuant to Paragraphs 29.a. and 29.b., LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

**E. COMPLIANCE MONITORING AND REPORTING**

30. LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least seventy-two (72) hours' notice prior to a dry weather Site Inspection, and at least twenty-four (24) hours' notice for any Site Inspection requested to occur in wet weather (a "Wet

Weather inspection"). For a Wet Weather inspection, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 58. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

31.    Document Provision. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

a.    Defendant shall promptly provide LA Waterkeeper copies of all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality;

b.    Within ten (10) Days of receipt by Defendant, send to LA Waterkeeper any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality. Defendant shall mail paper copies or email electronic copies of documents to LA Waterkeeper at the relevant notice address contained below.

CONSENT DECREE

32.     Compliance Monitoring. Defendant shall partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Twenty Thousand Dollars ($20,000.00) within thirty (30) days of the Entry Date. The payment shall be made via Electronic Funds Transfer (preferred) or by check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**F.     ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

33.     Environmental Mitigation Project. To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in waters tributary to the Los Angeles River, Defendant shall make a payment totaling Thirty Thousand Dollars ($30,000.00) to the Rose Foundation made within forty-five (45) days of the Entry Date, payable to the Rose Foundation and sent via overnight mail. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34.     LA Waterkeeper's Fees and Costs. Defendant shall pay a total of Sixty-Six Thousand Dollars ($66,000.00) to LA Waterkeeper to reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within forty five (45) days of the Entry Date. The payment shall be made payable to: Lozeau Drury LLP and delivered by overnight carrier to Lozeau Drury LLP, c/o Rebecca Davis, 1939 Harrison St., Suite 150, Oakland, California, 94612. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

35.     Missed Deadlines. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Defendant shall pay a stipulated payment of One Hundred Dollars ($100) per day, provided, however, LA Waterkeeper shall notify Defendant of any such failure and Defendant shall have ten (10) days to cure the alleged violation in lieu of any stipulated payment or submit the matter to the Dispute Resolution procedures set forth in Section IV herein. Such stipulated payments shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendant agrees to make the stipulated payment within forty-five(45) days after the resolution of the event that precipitated the stipulated payment liability.

36.     Interest on Late Payments. Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

CONSENT DECREE

## IV.    DISPUTE RESOLUTION

37.    This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

38.    Meet and Confer. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) Days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the meet and confer.

39.    Settlement Conference. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 38, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

40.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

41.    Plaintiff's Waiver and Release of Defendant. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims

that were raised in the 60-Day Notice Letter and/or that were alleged or could have been alleged in the Complaint up to and including the Termination Date of this Consent Decree. The Dispute Resolution provisions of this Consent Decree shall be the exclusive remedy for all Disputes arising under the Consent Decree between the parties during the Term.

42. Defendant's Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

43. Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI. MISCELLANEOUS PROVISIONS

44. No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

45. Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy

31
CONSENT DECREE

and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

46. <u>Authority.</u> The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

47. <u>Construction.</u> The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

48. <u>Full Settlement.</u> This Consent Decree constitutes a full and final settlement of this matter.

49. <u>Integration Clause.</u> This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

50. <u>Severability.</u> In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

51. <u>Choice of Law.</u> The laws of the United States shall govern this Consent Decree.

52. <u>Diligence.</u> Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

CONSENT DECREE

53. Effect of Consent Decree. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

54. Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

55. Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) Days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

56. Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) Days of any assignment.

57. Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations, permits or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee

CONSENT DECREE

negligence. Any party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

58.    Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to Plaintiff:
Los Angeles Waterkeeper
Erina Kwon
Benjamin Harris
Madeleine Siegel
360 E 2nd St., Suite 250
Los Angeles, CA 90012
Email: erina@lawaterkeeper.org
Email: ben@lawaterkeeper.org
Email: madeleine@lawaterkeeper.org
Phone: (310) 394-6162

With copies to:
Rebecca Davis
Lozeau Drury LLP
1939 Harrison, Suite 150
Oakland, CA 94612
Email: rebecca@lozeaudrury.com
Phone: (510) 230-0400

If to Defendant:
La Shanda Shipp
General Manager
Los Angeles Post Collections
4133 Bandini Blvd
Vernon, CA 90058
lshipp@republicservices.com

With copies to:
Republic Services, Inc.
5353 E. City North Drive
Phoenix, AZ 85054
Attn: Chief Legal Officer
tdolan@republicservices.com

and

Thomas Bruen
Law Offices of Thomas M. Bruen, P.C.
1990 North California Blvd., Suite 800
Walnut Creek, California 94596
Email: tbruen@tbsglaw.com
Phone: (925) 708-4149

Notifications of communications shall be deemed submitted three (3) Days after the date that they are postmarked and sent by first-class mail, or immediately after

34

CONSENT DECREE

acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

59.   If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: ___Dec 20th_____, 2025          By: _____
                                               Bruce Reznik
                                               Executive Director
                                               Los Angeles Waterkeeper


Dated: ___01/20/2026_____, 2025          By: _____
                                               John B. Nickerson
                                               Vice President
                                               Consolidated Disposal Service, LLC

APPROVED AS TO FORM

                                          LOZEAU DRURY LLP

Dated: __22_____, 2025          By: _____

Rebecca L. Davis
Attorney for Plaintiff

LAW OFFICES OF THOMAS M.
BRUEN, a P.C.

Dated: _Dec. 22_, 2025          By: _____

Thomas M. Bruen
Attorneys for Defendant

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: _April 28, 2026_          CENTRAL DISTRICT OF CALIFORNIA

_____
HONORABLE WESLEY L. HSU
United States District Court Judge

36
CONSENT DECREE